8683

## MARION COUNTY LUMBER CO. v. HODGES.

1. TIMBER DEEDS.—Under the clause in this timber deed reserving or excepting to the grantor enough timber for plantation purposes, enough timber should be left on the land for the use of the plantation in the condition it was in at the execution of the deed for an indefinite time. Such timber may be left in one lot or standing all over the land. Whether the clause is an "exception" or a "reservation" cannot affect the construction of it.

2. THE INJUNCTION restraining plaintiff from cutting the timber on the lot of land set apart by grantor for plantation purposes, does not restrain the plaintiff from building, maintaining and using its railroad across the tract of land to haul timber from other parts.

3. IBID.—TIMBER.—Under the terms of the deed in question, the removal of timber cut down and lying on the ground should not be enjoined.

4. IBID.—The Court has no power to relieve a party seeking an injunction from giving an injunction bond.

Before SPAIN, J., Dillon, August, 1912. Reversed.

Action by Marion County Lumber Company against C. P. Hodges.    Plaintiff appeals.

*Messrs. M. C. Woods* and *A. F. Woods,* for appellant, cite: *Use of logging road should not be enjoined:* 69 S. C. 176; 71 S. C. 64; 75 S. C. 220; 69 S. C. 554.    *Bond should have been required:* 51 S. C. 379; 73 S. C. 550; 83 S. C. 78; 89 S. C. 189; 72 S. C. 25; 5 S. C. 159.    *Moving timber felled should not be enjoined:* 22 Cyc. 834; 1 High on Jnj., sec. 673; 5 Barb. 486; 6 Barb. 507; 9 Am. Dec. 295; 58 N. E. 522; 94 N. W. 959; 30 At. 251; 89 S. C. 143; 1 High., secs. 723, 728.    *The clause contains a reservation:* 12 Rich. 314; 73 Am. Dec. 667; 42 Am. R. 608; 45 N. Y. Supp. 640; 11 N. Y. 321; 11 So. 834; 17 Mich. 38; 11 Rich. 621; Harp. 122; 13 Cyc. 674; 4 L. R. A. (N. S.) 477.    *Defendant cannot require any timber left for him:* 23 Ency. 187; 72 Am. D. 783.    *The deed referred to the plantation as it then existed:* 4 McC. 96; 75 S. C. 437; 85 S. C. 438

*Mr. D. D. McColl,* contra, cites: *A grant or exception of timber carries real estate:* 12 Rich. L. 315; 80 S. C. 106; 11 Rich. L. 261.    *Exception not void for indefiniteness or uncertainty:* 13 Cyc. 642, 677; 2 Spear L. 62; 2 Devlin, sec. 835, 980; 44 S. C. 548; 13 Cyc. 679; 40 W. Va. 420; 2 Strob. L. 172.    *Should defendant have given bond?* 73 S. C. 551; 88 S. C. 476; 83 S. C. 78; 58 S. C. 177.    *Felled timber properly included in injunction:* 77 S. C. 84; 84 S. C. 510.

November 10, 1913.    The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.    In 1904 William Evans conveyed to Cape Fear Lumber Company "all the timber, except such as may be necessary for plantation use, rails, wood and board," on a plantation containing 1,112 acres, 350 of which were then in cultivation, together with the rights of way

necessary for its removal. The grantee is to have ten years from date of the deed to cut and remove the timber; and, if it has not done so at the end of that time, it is to have ten years longer, by the payment of 6 per cent. on the purchase price. Plaintiff is the successor of Cape Fear Lumber Company in title to the timber, and defendant has acquired the title of William Evans to the land.

In 1912 plaintiff began to cut and remove the timber. Defendant tried to get plaintiff to come to some agreement as to what amount of timber should be left under the exception in the deed, which is quoted above, but plaintiff declined to make any agreement, contending that it has the right to cut and remove all the timber on the land, and that defendant's right is limited to the use of timber for the purposes mentioned in the deed only so long as it lasts; in other words, until plaintiff has cut and removed it.

Thereupon, under the advice of counsel, defendant had five disinterested landowners of the community to view the premises and set off to him the quantity of timber which, in their judgment, would satisfy the exception. Assuming that the exception embraced enough timber to satisfy the needs of the plantation not only in its condition at the date of the deed, but also as they supposed that it would be after more of it had been brought into cultivation as the result of having had the timber removed from it, and assuming also that those needs must be supplied, until a new growth of timber would attain sufficient size to supply them, which they estimated would require from twenty-five to thirty years, these gentlemen set off to defendant the timber on 94 acres of the tract. Defendant had the boundaries of the body of timber set off to him marked, and notified plaintiff not to cut any of it.

Defendant and his witnesses say that plaintiff's agents agreed to let defendant know, before going upon said tract to cut—presumably that he might have opportunity to take such steps as he might be advised to protect his interests—

and that, for some time, while they were cutting the timber on other parts of the plantation, they observed the boundaries of the part set off to defendant. But on the night of July 28th, 1912, in defiance of defendant's notice, and contrary to their said agreement, they laid their logging railroad on said tract, and began cutting the timber early the next morning with such a great force of hands that, by eleven o'clock in the forenoon, they had cut and carried away fourteen carloads of logs, aggregating 50,000 feet of timber. On discovering that plaintiff was thus endeavoring, as he supposed, to defeat his rights, defendant took with him an armed force of men, and drove plaintiff's logging crew out of the woods, threatening to shoot any who dared to remain to cut or remove any more of the timber. He also tore up 240 yards of plaintiff's logging railroad which had been laid on said tract.

Thereupon plaintiff brought this action for injunction, and, on an *ex parte* showing, his Honor, Judge Spain, issued an order enjoining defendant from "interfering with plaintiff's laborers, logging equipment and railroad, and otherwise interfering with plaintiff in the cutting and removal of the timber."

Under protection of this order, plaintiff resumed its operations, and was cutting and removing the timber on said tract at the rate of about 100,000 feet a day, when defendant obtained a rule requiring plaintiff to show cause why the order enjoining him should not be dissolved, and, in the meantime, restraining further operations by plaintiff. On hearing the return, and the affidavits pro and con, his Honor dissolved the injunction which he had issued against defendant, but enjoined both parties, pending the litigation, from "cutting, removing, or in anywise interfering with any of the timber" on said 94 acres. From this order plaintiff appealed.

Counsel for both parties agree that the case depends upon the proper construction of the clause in the Evans deed

which, for the sake of convenience, we have referred to as the exception, although, in legal effect, it is, perhaps more nearly a reservation. It is not material, however, whether we call it an exception or a reservation. While there is a well defined and established difference between the two, the Courts, with practical unanimity, agree that the use of the technical word "exception" or "reservation" will not be allowed to control the manifest intention, for they are often used interchangeably and synonymously. 13 Cyc. 674; 11 A. & E. Enc. L. (2d) 555. It is our duty, therefore, to give the clause in question a fair and reasonable interpretation, and, having ascertained the intention of the parties to the deed, to give effect to it.

Thus construing the exception, we cannot sustain plaintiff's contention that it has the right to cut and remove all the timber from the plantation, and that defendant has no right, except to use thereof so long as it lasts. The language is plain, and the intention is clearly expressed to except from the grant so much timber as may be necessary for plantation purposes. In view of the ever present and well known necessity for timber and its products to supply the various needs of a large plantation, it is highly improbable that the grantor would have intentionally conveyed all the timber on his plantation so that he would then, if the grantee had exercised the right to cut immediately, or afterwards, the cutting having been deferred to a later date, be compelled to go into the market and buy timber for his plantation uses. The words "such as may be necessary" look to the future as well as the present; and we think the intention was that enough timber should be left to supply both the present and future needs of the plantation. The deed fixes no limit of time—how long such needs must be supplied—and we should, therefore, fix such as appears, from the language used and all circumstances, to be the most reasonable and most probably that which was within the contemplation of the parties to the contract.

The plaintiff's own testimony strongly supports the construction which we have adopted, for it tends to show that the method of cutting and removing timber adopted by such companies is such that, for various reasons, almost invariably, if not necessarily, scattered saw timber enough is left to supply the ordinary demands of a plantation, and that no trees under ten inches in diameter are cut, and that this case has been no exception to the rule. It is not improbable, therefore, that the parties had in mind this method and custom of cutting, and contracted with reference to it.

The same reasons point to the conclusion that it was not the intention to except or reserve any particular body of timber or that on any particular part of the plantation. If so, it would have been easy to set it apart by description in the deed, and that would most probably have been done. Therefore, after execution of the deed, neither party could say to the other: "This tree is mine, and that is yours," or "this body of trees is mine and the rest is yours." It follows that defendant had no right to have the timber on the 94 acres set off to him, mark around it, and exclude plaintiff therefrom, unless he can make it appear that it will take all the timber thereon, including that which has been left on other parts of the plantation, to satisfy the exception, as herein interpreted. For, while it is true, as we have said, that the intention was not to except the timber on any particular part of the plantation, yet the exception must be given practical effect, and if, in doing so, it is found that all the timber has been cut, except that on the 94 acres, and if it takes all that to satisfy the exception, the fact that it is all in one body is an immaterial incident. Enough must be left to satisfy the exception, whether it be scattered about over the plantation, or in one body.

In the absence of language, or of facts and circumstances, indicating a contrary intention, the deed must be construed as referring to the needs of the plantation as it existed at the date thereof. The construction contended for by defendant

might result in the grantee taking nothing by the grant; because it is conceivable that, within the time allowed to cut and remove the timber, the grantor could bring enough additional land into cultivation, or in other ways, so increase the needs of the plantation for timber, that it would require all the timber thereon to satisfy them. Such a result could not have been intended. Therefore, plaintiff must leave only enough timber to supply the needs of the plantation as it existed at the date of the deed, and as it was then used. *Midland Timber Co.* v. *Pegues,* 93 S. C. 82, 76 S. E. R. 32, 13 Cyc. 677, and note.

Upon examining the record to ascertain the showing made by the parties respectively at the hearing, we find that five of defendant's neighbors, who are farmers, and are, therefore, supposed to know the needs of a plantation, testified that they are familiar with his plantation, and have thoroughly examined that part of it which has been cut over by plaintiff, and that enough timber has been left thereon for the use of the plantation for an unlimited time, without regard to the future growth of timber; and they further say that defendant's claim to the timber on the 94 acres is utterly unreasonable. Three of plaintiff's witnesses, who are experts in estimating timber, swear that an abundant supply has been left on the land already cut over, for all plantation purposes for an unlimited time—some of them say that as much as 200,000 feet have been left—enough to build twenty-five good tenant houses—and they all say that there is on the 94 acres at least a million feet of merchantable timber—enough to build 250 tenant houses. It appears that no timber under ten inches in diameter has been cut, except a small quantity for crossties, and we know that trees of this size and even smaller are fit for many plantation uses. It also appears that there are now on the plantation ten good tenant houses with the usual necessary outbuildings. The defendant furnishes no evidence to the contrary, except he says, in his own affidavit, that practically all the timber has

been cut off the land that has been cut over, and that nothing of any consequence or value has been left. The five neighbors who set off the 94 acres to him do not swear that so much is necessary. They only certify that it is.

It appears, therefore, that upon a proper construction of the deed and consideration of the showing made at the hearing, defendant was not entitled to an order of injunction. *Kelly* v. *Tiner,* 86 S. C. 160, 68 S. E. 465. But, as each party misconceived his own as well as his opponent's rights under the deed, the reversal of the order of injunction is without prejudice to have their respective rights, as herein adjudicated, observed and protected.

Appellant contends that the order was also erroneous, because it enjoined plaintiff from the enjoyment of its easements, and the right to use its railroad across the 94 acres to get out other timber about which there was no dispute. Plaintiff has misconstrued the order. It enjoins only the cutting, removing, or interfering with the timber on the 94 acres. Nothing is said about the easements or the use of the railroad. Nor does it appear that defendant objected to the plaintiff's use of its easements and railroad for the purpose of getting out any timber, except that on the 94 acres. The record shows that the whole contest before the Circuit Judge centered on the right to cut and remove that body of timber. Naturally, therefore, the order was directed solely to that matter.

The order does, however, enjoin the removal of about 85,000 feet of timber that had been cut, and was lying on the ground, when the restraining order obtained by defendant was served. Without regard to defendant's right to injunction on other grounds, under the circumstances of this case, it was error to enjoin the removal of the timber which had already been cut. *Lumber Corporation* v. *Burton,* 89 S. C. 143.

His Honor also erred in not requiring an injunction bond, as a condition of granting the injunction. The statute

requires it, and the Courts have no power to dispense with it.  *Smith* v. *Smith,* 51 S. C. 379, 29 S. E. 227; *Water Co.* v. *Nunamaker,* 73 S. C. 550, 53 S. E. 996; *Ex parte Zeigler,* 83 S. C. 78, 64 S. E. 513; *Life Ins. Co.* v. *Mobley,* 89 S. C. 189; *Groce* v. *G. S. & A. R. Co.,* 94 S. C. 199.

The order appealed from is, therefore, reversed, and the case is remanded to the Circuit Court for such further proceedings as may be necessary, not inconsistent with the views herein announced.

Reversed.

MR. JUSTICE WATTS *was absent at the hearing and did not participate in the decision of this case.*